[10 NYS3d 386]

U.S. Bank National Association, as Trustee for WFASC 2005-AR2, Plaintiff, v Juan Vasquez, Also Known as Juan Bautista Vazquez and Another, et al., Defendants.

Supreme Court, Rockland County, March 12, 2015

APPEARANCES OF COUNSEL

*Hogan Lovells US, LLP* for plaintiff.

*Legal Aid Society* for Juan Vasquez, also known as Juan Bautista Vazquez and another, defendant.

## OPINION OF THE COURT

ROBERT M. BERLINER, J.

Pursuant to this court's order dated August 26, 2014 this matter was scheduled for a hearing to determine if either or both of the parties have failed to negotiate in good faith. The hearing was completed and both sides submitted post-hearing memoranda.

Some history in this litigation is necessary to place this decision in the proper context. This mortgage foreclosure action was commenced in April 2010. Pursuant to statute, this matter was assigned to the Foreclosure Settlement Conference Part. Thirteen conferences were held, no settlement was reached and this matter was released from that Part.

Defendant subsequently made a motion seeking sanctions against plaintiff based upon its alleged failure to negotiate in good faith in accordance with CPLR 3408 (f). Pursuant to an order dated June 18, 2013 this court determined that plaintiff did not negotiate in good faith and suspended the charging of interest by plaintiff from November 9, 2010 to a date to be determined by the court. Additionally, this matter was referred back to the Foreclosure Settlement Conference Part where plaintiff was directed to negotiate in good faith and the referee was directed to file a report concerning that directive. Defendant was also directed to submit a new application for modification to plaintiff.

Two additional conferences were held by the referee in July and August of 2013 which were unsuccessful. The referee's report dated October 2013 stated that plaintiff did negotiate in good faith to the extent that a workout option was offered to defendant contingent upon an up-front contribution down payment of $75,000. The report also recommended that this court direct plaintiff to provide the pooling and servicing agreement of this mortgage-backed security (hereafter PSA) and proof that Wells Fargo, as the loan's servicer, had written to Wells Fargo Corporate Trust Services, as custodian for the trustee, encouraging it to participate in the Home Affordable Modification Program (hereafter HAMP), as required by the HAMP guidelines (hereafter the HAMP request letter).

This matter was subsequently conferenced by this court through its principal law clerk on October 22, 2013. At that conference defendant's attorney requested production of both the PSA and the HAMP request letter. Plaintiff's attorney refused to do so and indicated they contained privileged information. It was suggested that the documents be produced for in camera inspection. Plaintiff's attorney again refused, indicating that any order compelling production of these documents would be appealed.

Subsequently, plaintiff filed its motion for summary judgment and defendant cross-moved for sanctions against plaintiff for failure to negotiate in good faith and for production of certain documents. This motion and cross motion resulted in this court's August 26, 2014 order scheduling this hearing which was held on October 21, 2014.

On the date of the hearing the parties executed a stipulation of facts as well as the admission of certain documents into evidence including the PSA. The majority of the documents include various submissions by the Rockland Housing Action Coalition, Inc. (hereafter ROHAC) in relation to defendant's request for mortgage assistance beginning August 3, 2010 and concluding August 6, 2013.

At the hearing, the executive director of ROHAC testified concerning defendant's attempts to enter into a modification agreement with plaintiff. She or her designee was informed by plaintiff in December 2010 that this loan was ineligible for a HAMP. However, ROHAC was never provided with a copy of the PSA or a copy of the HAMP request letter. This witness further testified that there were at least 20 separate document submissions to plaintiff and only one loan modification option to defendant was offered by plaintiff. She further testified that Wells Fargo is the most difficult servicer to work with, has the most onerous document requests and takes the longest period of time to make determinations on modification requests.

Plaintiff's employee who testified was neither the underwriter nor the person who reviewed any of defendant's numerous modification applications. He did review defendant's file. He admitted that he has never seen the HAMP request letter in which Wells Fargo as servicer encouraged Wells Fargo as custodian for the trust to participate in HAMP. He further testified that he has not seen a response letter from an investor or any other entity declining to participate in HAMP and that he did not know who at Wells Fargo determined whether a trust can participate in HAMP.

Defendant has proved by a fair preponderance of the credible evidence that plaintiff has refused to produce documents that would demonstrate that defendant's loan is ineligible for a HAMP modification. Additionally, the court finds it somewhat disconcerting and troubling that plaintiff's counsel would advise this court's principal law clerk at a conference that the HAMP request letter existed but was privileged when in fact, if it exists, it cannot be located.

Pursuant to CPLR 3408 (f) the parties at a mandatory foreclosure settlement conference are required to negotiate in good faith to reach a mutually agreeable resolution. (*Wells Fargo Bank, N.A. v Meyers*, 108 AD3d 9 [2013].) To conclude that a party failed to negotiate in good faith a court must determine that the totality of the circumstances demonstrates that the party's conduct did not constitute a meaningful effort at reaching a resolution. (*US Bank N.A. v Sarmiento*, 121 AD3d 187, 203 [2014].)

In this matter, plaintiff has failed to demonstrate that it attempted to obtain a waiver of an investor prohibition or restriction in lowering the interest rate and to keep such evidence in the loan file. Despite requests by defendant's counsel, the referee and this court for plaintiff to produce evidence that it attempted to obtain such a waiver of the investor's restrictions in the PSA, plaintiff has failed to do so from the first settlement conference on June 9, 2010 through the date of this hearing on October 21, 2014. Therefore, plaintiff has failed to demonstrate that it followed HAMP regulations and guidelines and this court concludes that such conduct constitutes a failure to negotiate in good faith pursuant to CPLR 3408 (f). (*U.S. Bank N.A. v Smith*, 123 AD3d 914 [2014].) Furthermore, the totality of the circumstances demonstrated in this matter leads this court to the same conclusion that there was a failure to negotiate in good faith on the part of plaintiff. Therefore, the court will not confirm that portion of the referee's report dated October 2013 finding that plaintiff has upheld its obligation to negotiate in good faith. The court further finds that plaintiff has failed to demonstrate that defendant has failed to negotiate in good faith.

The court is cognizant that in a foreclosure action its role is limited to interpretation and enforcement of the terms agreed to by the parties and the court may not rewrite the contract or impose additional terms which the parties failed to insert. In fashioning a remedy for the good faith negotiation requirement

set forth in CPLR 3408 (f), this court needs to be mindful of the above. (*US Bank N.A. v Sarmiento.*)

Accordingly, the court, as a sanction, cancels all interest accrued, attorney's fees and costs, if any, between June 9, 2010 (the date of the first settlement conference) to the date on which settlement negotiations recommence in the Foreclosure Settlement Part. (*US Bank N.A. v Williams*, 121 AD3d 1098 [2014].) Defendant's request for counsel fees is denied in the court's discretion.

This matter is referred back to the Foreclosure Settlement Conference Part.